**Opinion issued May 9, 2013**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-12-00652-CR

—————————————

**JOWEL SINGLETON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 66948**

## MEMORANDUM OPINION

A jury found appellant, Jowel Singleton, guilty of the offense of aggravated

robbery[1] and assessed his punishment at confinement for eleven years and a $200

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2011).

fine. In one issue, appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

## Background

Farooq Ahmed testified that he worked as a cashier at the Fastop convenience store in Clute, Texas for four years and was working the night of November 30, 2011 when he was robbed. He explained that two men wearing ski masks came into the store with handguns around 10:00 to 10:30 p.m. and said "give me money." Ahmed used a trash can as cover, hoping that he would not be shot. He noted that one gun had a "white" or "silver" color and the other had a "reddish" color. One of the men hit the perfume case and knocked it over when he opened the cash register and took all the money and some lottery scratch-off tickets that were found outside. Ahmed told responding police officers that the men were about 5'5" to 5'8" tall and of "skinny weight." Although he could not tell the men's race, he knew that they were men from the sound of their voices.

Clute Police Department ("CPD") Officer S. O'Sullivan testified that on November 30, 2011, he was dispatched to the Fastop convenience store. A Fastop employee named Byron Dunlap told O'Sullivan at the scene that he was going to get a cellular telephone in the back when he heard a screaming noise. He returned to the front of the store and saw two men wearing ski masks and gloves, one

wearing a white t-shirt and the other wearing a black t-shirt and with a handgun and the other with a "red gun." O'Sullivan saw items thrown on the counter, an open cash register that was empty, and, between the doorway and the cash register, a knife, which he later determined belonged to the store. O'Sullivan transported Dunlap and Ahmed to a police station and took their statements. O'Sullivan explained that police detectives eventually determined that appellant and another man, Timothy Robinson, were suspects and arrested them on December 8, 2011.

CPD Detective Scotty Harris testified that he was dispatched to the Fastop convenience store on November 30, 2011, and, once there, he took photographs of the crime scene. Also, he was eventually able to obtain a video tape from the store's security cameras. Harris explained that he arrested a man named Louis Norris on December 3, 2011, after seeing him break into a car at the Sherwood Forest Apartment complex. Harris later took from Norris a statement in which he provided information about the Fastop convenience store robbery. Harris explained that he believed Norris because he had information that had not been released to the public, and Norris was not promised anything in return for the information. Norris identified appellant in a photographic lineup as a party to the robbery. Harris explained that he did not obtain a search warrant for appellant's residence to look for the guns used in the robbery because appellant did not have a permanent residence. Harris noted that it was possible that Norris was involved in

3

the robbery since he had information that the public did not have, and he and the man that Norris identified as working with him burglarizing vehicles fit the general description given by the witnesses. He also acknowledged that Norris had asked to speak to him, and it was possible that his motive for doing so was to try to "get a deal." And he noted that because the punishment for aggravated robbery is confinement for five to ninety-nine years, Norris would not want to be caught and this could constitute a motive to lie and say that someone else committed the robbery. However, Norris was never a suspect in the Fastop convenience store robbery.

Norris testified that he was not offered anything in exchange for his testimony against appellant and he still had an open case against him for burglary of a motor vehicle. Norris explained that at about 7:30 p.m. on March 30, 2011, a few days before he was arrested, he was at his mother's apartment at Brighton Manor when appellant and Robinson came by. The men smoked synthetic marijuana together, and appellant and Robinson asked Norris to rob the Fastop convenience store with them later that night. They showed Norris an "orange flare gun" and a "silver .25" handgun that they planned to use. Norris initially agreed to participate, and appellant and Robinson said that they would come back for him. Later that night, after 10:00 p.m., he heard a knock on his window and saw appellant and Robinson through the window blind. Norris ignored the knock and

4

stayed in his bed because he had changed his mind and did not want to participate in the robbery. Norris explained that he did not leave the apartment that night and would not be able to get in and out because only his mother had a key and she knew he was in the apartment that night.

Norris was asked on direct examination whether he had seen Robinson the next day, the day after the robbery. Norris testified that he saw Robinson who told Norris that he and appellant had robbed the store, but had only gotten a "hundred and something dollars" from one cash register. On cross-examination and on re-direct examination, Norris clarified that he had talked to both appellant and Robinson the day after the robbery. He noted that any inconsistencies between his testimony and his written statement to Detective Harris did not mean that his statement to Harris was incorrect simply because "a couple of details were left out." And he explained that when he was arrested and gave his statement to Harris, that he was "drunk" and had "just came from a party," "but [he knew] what happened." Norris also explained that he could only have obtained the details about the robbery from appellant and Robinson, they were not enemies, and he had no reason to "lie" about them. Norris also noted that the man who was involved with him in the motor-vehicle burglaries is Hispanic, short, and weighs over 200 pounds; thus, he did not fit the description of either of the Fastop robbers.

5

Norris's mother, Tina Cooper, testified that he lived with her at the Brighton Manor apartments on November 30, 2011. She was the only person with a key to the apartment door and made sure that everyone was in her apartment before she went to bed at 10:30 p.m. after watching the television news. Cooper explained that she did not at any time in November, awaken to find the door or any windows to her apartment unlocked. And she noted that the bedroom doors in the apartment were not closed until she went to bed at 10:30 p.m. Thus, she "knew" that Norris was in his room until that time. She explained that Norris has a t-shirt, but not a black t-shirt, has only jeans, not dark pants, and does not own a "hoodie" or a ski mask. The only gloves in her apartment were gloves with white dots that she used for work. And she has never seen Norris with weapons in her apartment.

## Sufficiency of the Evidence

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction because the State's witnesses had "no credibility," the strength of the evidence "was tenuous at best," and, even when considered in the light most favorable to the verdict, "this jury could not be said to have been rationally justified in finding guilt beyond a reasonable doubt." Appellant asserts that the State's star witness, Louis Norris, was "an admitted snitch and a thief," who was "intoxicated, [had] limited memory, [was] drunk at that time [and had]

6

smoked synthetic, fake weed," while the State's other witness "could not accurately recall anything."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). In doing so, we give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Id*. We defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *See Williams*, 235 S.W.3d at 750.

7

Circumstantial evidence can be as probative as direct evidence in establishing the guilt of an actor, and it alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The term "inference" means,

> In the law of evidence, a truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved. . . .

*Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (citing BLACK'S LAW DICTIONARY 700 (5th ed. 1979)). For a jury to infer a fact, "it must be able to deduce that fact as a logical consequence from other proven facts." *Id.*

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2011). A person commits the offense of aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2) (Vernon 2011). A firearm is considered a deadly weapon. *Id.* § 1.07(a)(17)(A) (Vernon Supp. 2012). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *Id.* § 31.03(a) (Vernon Supp. 2012).

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given the witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). And, they may choose to believe or disbelieve any part of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Likewise, "reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)).

Here, Ahmed testified that the two men who robbed him at the Fastop convenience store used two handguns, one that was "reddish" in color, and the other one "silver." Because the robbers wore ski masks and gloves, he was only able to identify them as males because of their voices, and he told police officers that they were between 5'5" and 5'8" tall, "skinny," and weighed around 160 to 165 pounds.

Norris positively identified appellant in a photographic lineup as one of the men who planned the robbery and had asked Norris to participate in the robbery. And he corroborated the eye-witness testimony concerning appellant's height and weight. Specifically, Norris testified that appellant and Robinson had come to his mother's apartment on the night of the robbery, asked him to participate in the

9

robbery, and showed him the guns that they planned to use, including an orange flare gun and a silver .25 handgun. Norris explained that both appellant and Robinson had come back for him later that night, and although he looked through the blind and saw them both, he ignored their knock on his window because he had changed his mind about participating in the robbery. And, although Norris, in his testimony on direct examination disclosed only the fact that he saw and spoke with Robinson on the day after the robbery, he clarified on cross-examination and redirect examination that he actually saw both appellant and Robinson, who both told him that they had committed the robbery. Norris explained that although his statement to Detective Harris might be inconsistent, "[he knew] what happened" even though he might have "left out" some details. Moreover, he stated that both appellant and Robinson admitted to having robbed the store. As fact finder, the jury was entitled to resolve conflicts in the testimony, and we defer to that resolution. *Williams*, 235 S.W.3d at 750. And Detective Harris testified that Norris gave him information about the robbery that had not been released to the public. Moreover, Norris's description of the guns that appellant and Robinson had showed to him and planned to use in the robbery was similar to Ahmed's description of the weapons that were actually used in the robbery.

Although each piece of evidence may lack strength when considered "in isolation, the consistency of the evidence and the reasonable inferences drawn

10

therefrom, provide the girders to strengthen the evidence" and support the jury's finding of the elements of the offense. *See Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003). The bottom line is that from the evidence presented, including the facts that appellant and Robinson asked Norris to commit the robbery with them, they came to his apartment to get him as planned, the robbery was committed as planned, and both appellant and Robinson admitted to Norris the next day that they had robbed the store, the jury could have reasonably found that appellant committed the robbery with Robinson.

Viewing the evidence in the light more favorable to the jury's findings, the testimony of Norris, Ahmed, and Detective Harris supports an inference that appellant participated in the robbery of the Fastop convenience store. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. CIV. P. 47.2(b).

11