In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-315 CR


____________________



CURTIS T. PHILLIPS II, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 411th District Court


San Jacinto County, Texas


Trial Cause No. 9093






 MEMORANDUM OPINION 


 A jury convicted Curtis T. Phillips II for deadly conduct, a third degree felony. Tex.
Pen. Code. Ann. § 22.05(b), (e) (Vernon 2003). Based on the jury's sentence, the trial court
subsequently assessed punishment at five years' confinement, probated for five years. In
three issues on appeal, Phillips contests the legal and factual sufficiency of the evidence to
support his conviction and asserts that the jury did not properly consider his evidence that he
was not guilty of the offense. We overrule his three issues and affirm the judgment of the
trial court.

Legal and Factual Sufficiency Review

 Phillips's first and second issues on appeal contest the legal and factual sufficiency
of the evidence to support his conviction. He argues that the evidence is insufficient to show
he committed the offense of deadly conduct by knowingly discharging a firearm at or in the
direction of Keith Porter. 

 In determining issues of legal sufficiency, we ask if, after reviewing the evidence in
the light most favorable to the verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). "The reviewing court must give
deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" 
Hooper, 214 S.W.3d at 13 (quoting Jackson, 443 U.S. at 319).

 In determining the evidence's factual sufficiency, we review the evidence in a neutral
light. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). "Evidence can be
factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so
weak that the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting
evidence is outweighed by the great weight and preponderance of the contrary evidence so
as to render the verdict clearly wrong and manifestly unjust." Id. (citing Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000)). The reviewing court may not reverse for factual sufficiency if "'the greater
weight and preponderance of the evidence actually favors conviction.'" Id. (quoting Watson,
204 S.W.3d at 417). While the appellate court may "second-guess the jury to a limited
degree, the review should still be deferential, with a high level of skepticism about the jury's
verdict required before a reversal can occur." Id. (citing Watson, 204 S.W.3d at 417).

 A person commits the offense of deadly conduct if the person "knowingly discharges
a firearm at or in the direction of" one or more individuals. Tex. Pen. Code Ann. §
22.05(b)(1). This offense is a felony of the third degree. Id. § 22.05(e). 

 Phillips argues that the evidence fails to show that he discharged his firearm at or in
the direction of Porter. Although Phillips acknowledges that he discharged his firearm, he
maintains that he directed the shot straight up in the air versus toward Porter. Phillips
contends that Porter provided the only testimony that the shot was directed at or in his
direction, and argues that Porter's testimony is not credible. 

 The altercation that is the subject of this dispute occurred when Phillips found his road
blocked by a service truck that was involved in the delivery of cement to a nearby drilling
site. Beginning with Porter, the State presented several witnesses to establish its case against
Phillips. Porter testified that on October 22, 2004, he and another co-worker, William Nunn,
were delivering cement to a drilling rig located on Phillips's property. Porter and Nunn
drove separate tractor-trailer trucks to the site. Porter explained that after he and Nunn
parked their trucks at the location, he saw a sports utility vehicle ("SUV") approaching him. 
Porter stated that at that point his truck was not blocking the road to Phillips's house. Porter
testified that when he exited his truck, Phillips asked him whether he was "the driver that was
driving the m***** f****** truck that was parked out there in the lease road." After
answering positively, Ported stated that Phillips told him to find another place to park and
said, "We don't like your kind in this neck of the woods. I advise you to get your black a**
out of here before it gets dark . . . [o]r I'll blow your m***** f****** head off." Porter
responded by telling Phillips to leave because he had a job to do. 

 At that point, according to Porter, Phillips "come out of his vehicle with a weapon,
a black pistol." Porter testified that Phillips responded by saying "You don't know who you
are f****** with, b****. I'll blow your m***** f****** head off." Porter explained that
he then told Phillips that he was going to write Phillips's license plate number down. Porter
then stepped back. As he began writing Phillips's license plate number in a notepad that he
retrieved from his back pocket, Porter testified that Phillips said, "N*****, you are going to
die." Porter testified that Phillips then fired the pistol right over his head; specifically,
according to Porter: "When [Phillips] shot, [Porter] heard the bullet; and I fell to the
ground." After that, Phillips drove away saying, "I'll be back." 

 During cross-examination, Porter testified that he saw three other adult males in the
SUV with Phillips. Porter also stated that he did not approach Phillips's SUV and that he did
not go back to his truck during the confrontation. When asked to describe Phillips's handling
of the gun, Porter explained that the pistol was in Phillips's right hand and that Phillips
opened the door to his SUV and put his foot on the ground. Although Porter acknowledged
that Phillips is a paraplegic, he maintained that Phillips's foot was on the ground. Porter
reiterated during his cross-examination that Phillips shot in his direction and that Porter heard
the bullet whiz by. 

 Porter's co-worker, Nunn, testified regarding his recollection of the events. Nunn
stated that he did not see Phillips, but that he did see Phillips's SUV pull up next to Porter's
truck. Nunn then explained that he was unloading cement from his truck when he heard a
"pop" and he hit the ground. From the ground, Nunn looked over to see where Porter was
located, but did not see him. Nunn testified that he got up and walked around Porter's truck
and saw a gun pointed towards Porter. Nunn explained that he could not see the person who
held the gun. When Nunn saw Porter, Porter indicated by gesture that Nunn needed to leave
for his safety. After that, Nunn testified that as the SUV was leaving, he heard someone say 
"If you are here after dark, you are a dead n*****." 

 The State also called as a witness Everett Jones, a driller working on the rig on
October 22, 2004. Jones testified that he found a 9 millimeter shell-casing and gave it to
Porter after the incident. Jones testified that he observed Phillips and Porter arguing and then
heard the shot. Jones acknowledged that he did not see the shell-casing come from Phillips's
firearm. 

 Constable Clack then testified for the State. Clack investigated the incident and spoke
to witnesses including Phillips and Porter. According to Clack, Phillips never denied
shooting his pistol at Porter. 

 Phillips testified in his own defense. Phillips testified that when he, Cody Walters,
Allen Noaker, and Phillips's three-year-old son, attempted to exit his home from the lease
road that he could not, because a truck blocked the road. Phillips and his passengers returned
to his house where they transferred from a car into the SUV. Phillips and his passengers then
drove to the truck, which had been moved, and located the truck's driver. Phillips testified
that he requested that in the future Porter find another place to park his truck. Phillips then
claimed that Porter called him a "white cracker m***** f*****," to which he responded by
calling Porter a "n*****." Phillips testified that Porter approached his vehicle, and because
Phillips was concerned that Porter might hit him, Phillips put his hand "right there." 
According to Phillips, Porter noticed the pistol and said: "Oh, you've got one? . . . I've got
one, too." Phillips stated that Porter then went to his truck to retrieve what Phillips believed
to be a gun, opened the truck's door, and reached into the truck's sleep compartment. 
Phillips testified that Porter then began to approach the SUV with one hand in the pocket of
his jumpsuit. Because he felt that he and his passengers were threatened, Phillips explained
that when Porter was three to four feet from the SUV, Phillips pulled out his pistol and shot
straight up in the air. Phillips denied that he opened his door or stepped out of the SUV. 
According to Phillips, he could not retreat but instead reacted by firing the pistol into the air. 
Phillips maintains that he shot straight up and did not shoot at or in the direction of Porter. 
Nevertheless, Phillips acknowledged on cross-examination that he did point the pistol over
Porter's head. Phillips further testified that he never saw a firearm in Porter's possession but
indicated that he did see Porter writing down Phillips's license plate number. 

 Three other witnesses testified in Phillips's defense: his wife, Misty, and two other
passengers in the SUV, Walters and Noaker. Misty, who was not present at the altercation,
explained the degree to which Phillips suffered from paralysis and the type of assistance he
required to enter or exit a vehicle. 

 Two of Phillips's passengers, Walters and Noaker, gave their accounts of the event. 
Walters and Noaker both testified that shortly after Phillips and Porter began arguing about
the truck's blocking of the road, Porter commented that he had something for Phillips and
Porter returned to his truck. They agreed that as Porter walked back toward the SUV with
his hand in his pocket, that Phillips demanded that Porter remove his hand from his pocket. 
When Porter did not comply, Phillips pulled the pistol out and shot straight up into the air. 
Both witnesses acknowledged that they never saw a gun in Porter's possession and that they
both saw Porter with a pad and a pen that he used to write down Phillips's license number. 

 In summary, the parties presented the jury with conflicting evidence. The
reconciliation of conflicts in evidence is within the exclusive province of the jury. Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); see also Hooper, 214 S.W.3d at 13. We
find the evidence legally sufficient to show that Phillips knowingly discharged his firearm
at or in the direction of Porter. The record contains evidence showing Phillips had a gun,
pointed it in Porter's direction, and fired a shot in Porter's direction that Porter perceived as
threatening. By Phillips's own account, Porter was only three to four feet away when Phillips
discharged the pistol. According to Porter, the bullet was close enough that he heard it
"whiz" by as it passed him. We hold that under the evidence presented to the jury,
reasonable jurors could have found the essential elements of deadly conduct beyond a
reasonable doubt. See Hooper, 214 S.W.3d at 13. We overrule issue one.

 Additionally, the evidence is factually sufficient to support Phillips's conviction for
deadly conduct. We have reviewed all of the evidence and considered Phillips's arguments
about the reliability and contradictions in Porter's testimony. The jury may believe all, some,
or none of any witness's testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986); Jaggers v. State, 125 S.W.3d 661, 672 (Tex. App.-Houston [1st Dist.] 2003, pet.
ref'd). In this case, the jury believed that the evidence demonstrated Phillips fired at or in
Porter's direction and rejected the testimony of Phillips and his two passengers that Phillips
fired straight up in the air. The contradictions between Porter's version of the events and the
accounts of the other witnesses are not sufficient to create the high level of skepticism
required to justify our reversing the jury's verdict. The evidence supporting the verdict is not
outweighed by the great weight and preponderance of the evidence and not so "weak" that
it renders the verdict "clearly wrong and manifestly unjust." See Roberts, 220 S.W.3d at 524. 
We overrule issue two.

Consideration of Defensive Theories

 In his third issue, Phillips asserts that the evidence adduced at trial supported his self-defense and his defense of third person theories, and he further contends that the jury failed
to make their judgment solely from his viewpoint. First, we note that the jury charge
contained instructions on Phillips's defensive theories. See Tex. Pen. Code Ann. §§ 9.31,
9.32, 9.33 (Vernon 2003). Moreover, the charge also instructed the jury that, "in considering
all the foregoing [defense instructions], you [the jury,] should place yourselves in defendant's
position and view the circumstances from his standpoint alone at the time in question."

 We generally presume that juries follow trial court instructions. See Colburn v. State,
966 S.W.2d 511, 520 (Tex. Crim. App. 1998). A criminal defendant bears the burden of
production on his defensive theories, which requires that he introduce some evidence to
support the theories. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). 
However, once the defendant produces this evidence, the State bears the burden of
persuasion to disprove the defense. Id. This burden of persuasion does not require the
production of evidence; rather, it requires only that the State prove its case beyond a
reasonable doubt. Id. For example, self-defense is generally a fact issue to be determined
by the jury, which is free to accept or reject it. See Saxton v. State, 804 S.W.2d 910, 913-14
(Tex. Crim. App. 1991). The jury's return of a guilty verdict implies that it rejected the
defendant's defensive theory. Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d at 914. 

 Here, the jury returned a guilty verdict; therefore, it implicitly found against Phillips's
defensive theories. We previously reviewed the evidence and determined that it is legally
and factually sufficient to support Phillips's conviction beyond a reasonable doubt. With
respect to Phillips's defensive theories, we review "the evidence in a neutral light and ask[]
whether the State's evidence taken alone is too weak to support the finding and whether the
proof of guilt, although adequate if taken alone, is against the great weight and
preponderance of the evidence." Zuliani, 97 S.W.3d at 595. 

 With respect to Phillips's defenses, the evidence favoring the State includes testimony
from which a jury could conclude that Porter never had a weapon because no one ever saw
a weapon in Porter's possession. Further, the jury could conclude, based on the evidence
before it, that Porter never physically threatened Phillips or his passengers. Nothing blocked
Phillips from driving his SUV away from the scene and there is nothing to indicate that the
SUV was in any way disabled. All of Phillips's passengers were inside the SUV and Porter
was on foot. Thus, the jury, under these facts, could reasonably conclude that Phillips did
not act in self-defense, that he did not act in the defense of others, or that a reasonable person
would have retreated under the circumstances presented here. 

 We hold that the evidence is sufficient, when reviewed in a neutral light, to allow the
jury to reject Phillips's claims that he acted in self-defense, in the defense of his passengers,
or that he justifiably used deadly force in defense of himself or of his passengers. 
Accordingly, we overrule Phillips's third issue and affirm the trial court's judgment.

 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice



Submitted on April 12, 2007

Opinion Delivered July 25, 2007

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.