Opinion issued June 18, 2009









                    










In The
Court of Appeals
For The
First District of Texas




NO. 01–08–00827–CR




PETER FLOYD HACKADAY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1128825




MEMORANDUM OPINION

          Appellant, Peter Floyd Hackaday, was charged by indictment with the offense
of aggravated robbery, to which he pleaded not guilty. See Tex. Penal Code Ann.
§§ 29.02(a)(2), 29.03(a)(2) (Vernon 2003). A jury found appellant guilty and
assessed punishment at 15 years’ confinement. 
          In three issues, appellant contends that (1) the non-accomplice evidence is
insufficient to connect him with the commission of the offense; (2) the evidence is
“factually insufficient to prove appellant was a party to the offense,” and (3) the trial
court erred by admitting evidence of an extraneous offense. 
          We affirm.BackgroundOn the night of August 11, 2007, Kristina Gallegos was the front-seat
passenger in a white Ford Explorer driven by Jacqueline Martinez. While en route
to pick up Gallegos’s son, Gallegos and Martinez were passed by a blue Ford
Explorer. The blue Explorer pulled in front of Gallegos and Martinez and stopped
at a stop sign, where two men got out and headed toward Gallegos and Martinez. 
          According to Gallegos and Martinez, one of the men, whom Martinez later
identified as Jeremiah Holmes, got out of the driver’s side of the blue Explorer. The
other man, whom Martinez later identified as appellant, got out of the passenger side. 
Martinez testified that both men came from the back seat. 
          Gallegos and Martinez each testified that the men were African-American,
were wearing white or light-colored tee-shirts, and that they were wearing bandanas
over the lower portions of their faces. One of the bandanas was dark-colored. 
Gallegos added that the men were wearing baseball caps. Gallegos and Martinez
each testified that they saw the man identified as Holmes with a gun in his hand.
Gallegos testified that she feared he was going to kill her; Martinez testified that she
believed they were being “car jacked.” As Martinez attempted to race around the men
and drive away, Holmes fired into the vehicle—breaking the passenger-side window
and striking Gallegos in the right arm. Martinez drove Gallegos to the hospital, where
Gallegos was treated for the gunshot wound. Martinez gave the police a description
of the vehicle and of the men.
          Approximately an hour later, at an apartment complex in the same area,
Gerardo Arellano arrived home from work and was getting out of his car when he was
approached by two African-American men. Arellano testified that one of the men
held him at gunpoint and demanded his money, while the other “looked to the sides.” 
Arellano attempted to get back into his car and the gunman reached into Arellano’s
pocket and took Arellano’s money. The gunman then shot Arellano in his right arm,
and the two men fled to a black vehicle waiting nearby. The bullet went through
Arellano’s right arm and into his side. Arellano was taken to the hospital by
ambulance, where he underwent surgery and was hospitalized for over a month. 
Ultimately, Arellano was unable to identify the assailants, but he indicated that at
least three individuals were involved.
          Less than an hour later, the police located the blue Explorer and detained five
individuals—appellant, Holmes, Jonathan Lee, Jerome Hogan, and Jerrico Walton. 
Harris County Sheriff’s Office (“HCSO”) Detective W. Valerio brought Martinez to
the scene for a street lineup. Martinez was unable to identify the perpetrators by their
facial features because of the bandanas that had covered their faces during the
incident, but she was able to identify them based on height, build, and clothing. 
Martinez testified that she identified Holmes as the gunman and appellant as his
cohort. Detective Valerio testified that Martinez’s identification of the second man
was “tentative,” but that she had described him as being five-feet-seven-inches to
five-feet-eight-inches tall, 160 to 170 pounds, and similar in build to the gunman. 
Detective Valerio testified that Martinez’s description ruled out Lee, Hogan, and
Walton, in that “one was taller, one was shorter, and smaller.” 
          HCSO Deputy R. Glover searched the blue Explorer, which was a 2000 model
with Louisiana license plates. In the back seat, Deputy Glover found two
bandanas—one dark blue and one camouflage in color; two baseball caps; and a
revolver. The revolver was found wrapped in the camouflage bandana and contained
one live round and two spent casings.
 
          Lee pled guilty to aggravated robbery for his role in the Gallegos and Arellano
incidents. Lee testified that the group was on their way to a nightclub at around 11:00
p.m. on the night at issue and that they were traveling behind a white Ford Explorer. 
Lee asserted that he was sitting in the middle of the back seat between Holmes and
appellant, and that appellant was seated on the passenger side. Holmes, who was
seated on the driver’s side, whispered something to Hogan. Hogan then sped up and
got in front of the white Explorer. They stopped, and appellant got out of the
passenger side of the vehicle. According to Lee, appellant acted alone. Holmes did
not get out because the backseat-driver’s-side door had a child safety lock and would
not open. Lee said that he saw appellant pull a handgun from his waistband that was
wrapped in a camouflage bandana and “run towards” the white Explorer. Lee said
that this was not the first time he had seen appellant with the gun because appellant
had shown Holmes the gun earlier in the evening. As the white Explorer drove away,
appellant fired one shot at the vehicle. 
          According to Lee, after the Gallegos incident, Holmes directed Hogan to the
apartment complex where Arrellano was later robbed and shot. Holmes and appellant
spoke outside the vehicle, but Lee did not hear the conversation. The two then went
into an alleyway, with appellant carrying the handgun. Lee lost sight of Holmes and
appellant, but heard something that sounded like a “little firecracker.” The two ran
back to the vehicle and Holmes had the gun. As they were driving away, Holmes
handed money to Hogan. 
          HCSD Deputy J. Hernandez interviewed appellant. In his statement, which
was admitted at trial and read into the record, appellant admitted that he had been
riding in the backseat of the blue Explorer during the incidents at issue. According
to appellant, he was seated in the middle of the back seat between Lee and Holmes.
While they were traveling westbound on the service road of Beltway 8, heading
toward State Highway 249, Holmes pulled a black revolver from his waistband and
said that he wanted to rob someone. They passed a white Explorer, later identified
as that of Gallegos and Martinez, and stopped in front of it at a stop sign. According
to appellant, Holmes and Lee got out and walked towards the white Explorer. Holmes
had the revolver in his hand. Appellant saw the driver of the white Explorer attempt
to drive around Holmes, and he heard a gunshot. 
          According to appellant, as they were leaving the Gallegos shooting, Holmes
said that he “wanted money to buy weed” and that he still “wanted to rob some
people.” Hogan drove around for about an hour, attempting to find someone for
Holmes to rob. They then followed a red car, later identified as Arellano’s, into an
apartment complex. Appellant stated that a “Mexican Male” got out of the car and
that Holmes and Lee “jumped out” and ran up to him. Appellant saw Holmes point
the gun at Arellano and heard a gunshot. Holmes and Lee ran back to the Explorer,
and the group drove away.
          Appellant then told Hogan to take him home. On the way, Holmes told Hogan
to follow another vehicle into an apartment complex, where Holmes and Lee held a
couple at gunpoint and took their money. Then, the group saw a man on foot in a
parking lot and drove up to him. Without exiting the Explorer, Holmes pointed a gun
at the man and demanded his money. The robbery attempt was foiled when they saw
a marked police car drive into the parking lot. Hogan then drove to Northwest Park
subdivision and parked. The men got out, and Holmes handed the gun to Lee to put
in a mailbox. Lee refused and, instead, put the gun in the backseat. The men started
walking toward Hogan’s friend’s house and, before they got to the house, the police
surrounded and detained them.
          Appellant was charged with the aggravated robbery of Gallegos. The trial
court admitted the evidence of the Arellano robbery as an extraneous offense. The
jury charge authorized the jury to convict appellant either as a principal or as a party.
Corroboration of Accomplice Witness Testimony
In his first issue, appellant contends that the non-accomplice evidence is
insufficient to connect him to the commission of the offense. Specifically, appellant
contends that “there is no non-accomplice evidence tending to show that Appellant
acted with intent to assist, aid or encourage the commission of the offense with the
specific intent to commit the offense of aggravated robbery.” In addition, appellant 
contends that Martinez and Gallegos failed to identify him in a line up, photo spread,
or in the court room and that Martinez’s height and weight description was
insufficient to connect him to the offense because the record is silent regarding
appellant’s actual height and weight.
A.      Standard of Review
Article 38.14 of the Texas Code of Criminal Procedure provides that a
conviction cannot stand upon accomplice testimony unless it is corroborated by other
evidence that tends to connect the accused with the offense. Tex. Code Crim. Proc.
Ann. art. 38.14 (Vernon 2005); Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim.
App. 2001); Cao v. State, 183 S.W.3d 707, 710 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d). Corroborating evidence is insufficient if it merely shows the
commission of an offense. Tex. Code Crim. Proc. Ann. art. 38.14; Solomon, 49
S.W.3d at 361; Cao, 183 S.W.3d at 710. In making our review, we “eliminate all of
the accomplice testimony from consideration and then examine the remaining
portions of the record to see if there is any evidence that tends to connect the accused
with the commission of the offense.” Castillo v. State, 221 S.W.3d 689, 691 (Tex.
Crim. App. 2007). The corroborating evidence need not be sufficient by itself to
establish guilt; there simply needs to be “other” evidence “tending to connect” the
defendant to the offense alleged in the indictment. Id. The non-accomplice evidence
need not directly link the accused to the commission of the offense nor need be
sufficient on its own to establish the accused’s guilt beyond a reasonable doubt. Id.;
Cao, 183 S.W.3d at 710. Article 38.14 merely requires some non-accomplice
evidence tending to connect the accused with the crime, not non-accomplice evidence
for every element of the crime. Cao, 183 S.W.3d at 711 (citing Vasquez v. State, 56
S.W.3d 46, 48 (Tex. Crim. App. 2001)).
“The appellant’s liability as a principal or under a parties theory is of no
relevance under an Article 38.14 analysis. The question is whether some evidence
‘tends to connect’ him to the crime; the connection need not establish the exact nature
of his involvement (as a principal or party).” Joubert v. State, 235 S.W.3d 729, 731
(Tex. Crim. App. 2007). 
B.      Analysis
          The trial court instructed the jury that the witness Lee was an accomplice as a
matter of law. In addition, the trial court instructed the jury as to the corroboration
required. Eliminating the testimony of Lee from consideration, we conclude that the
record contains independent evidence that tends to connect appellant with the
commission of the offense. See Castillo, 221 S.W.3d at 691.Appellant attested, through his statement admitted at trial, that he was riding
in the back seat of the Explorer with Holmes and Lee before, during, and after the
commission of the offense at issue. See Brown v. State, 270 S.W.3d 564, 568 (Tex.
Crim. App. 2007) (recognizing that corroboration may come from the accused and
appellant’s admission that he “was there” when offense occurred is some evidence
that tends to connect him to commission of offense). Evidence that appellant was in
the company of the accomplice at or near the time or place of the crime is proper
corroborating evidence to support a conviction. See Hernandez v. State, 939 S.W.2d
173, 178 (Tex. Crim. App. 1997).
According to appellant, while he and the other men were traveling westbound
on the service road of Beltway 8, heading toward State Highway 249, Holmes pulled
a black revolver from his waistband and said that he wanted to rob someone. They
were traveling behind a white Explorer when Holmes said that he wanted to rob the
people in the white Explorer. Hogan then passed a white Explorer, later identified
as that of Gallegos and Martinez, and stopped in front of it.  
Martinez and Gallegos testified that two men got out of the Explorer and began
moving toward them. Martinez identified appellant as the man who got out of the
passenger side. Gallegos and Martinez each testified that they saw the man who got
out on the driver’s side, later identified as Holmes, holding a gun. Gallegos testified
that she feared he was going to kill her; Martinez testified that she believed they were
being “car jacked.” As Martinez attempted to race around the men and drive away,
Holmes fired into the vehicle—breaking the passenger-side window and striking
Gallegos in the right arm. 
Martinez and Gallegos testified that Holmes and appellant were wearing
bandanas—one of which was dark-colored—which concealed the lower portions of
their faces. Deputy Glover testified that he found two bandanas—one of which was
dark blue—and two baseball caps in the blue Explorer. He found a revolver wrapped
in one of the bandanas. This evidence tends to connect appellant to the commission
of the offense. See Rios v. State, 263 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.]
2005, pet. dism’d) (stating that police apprehending defendant in vehicle containing
revolver and ski masks that victim testified assailants were wearing, were
circumstances tending to connect defendant to commission of offense). Deputy
Glover testified that he found these items in the back seat. Appellant attested,
through his statement admitted at trial, that he had been sitting in the back seat of the
Explorer. 
Considering the non-accomplice evidence in the record, we conclude that there
is some evidence that tends to connect appellant to the aggravated robbery of
Gallegos. See Joubert, 235 S.W.3d at 731; Castillo, 221 S.W.3d at 691.
Appellant contends that Martinez’s identification based on her approximations
of height and weight was insufficient to connect him to the offense because the record
is silent regarding appellant’s actual height and weight. Detective Valerio testified
that, after Martinez identified Holmes, she described the second actor as five-feet-seven-inches to five-feet-eight-inches in height, weighing 160 to 170 pounds, and
similar to the build of Holmes. Detective Valerio testified that such physical
attributes eliminated the other three men in the Explorer, in that “one was taller, one
was shorter, and smaller.” The State was not required to present evidence of
appellant’s actual height and weight. See e.g., Jasso v. State, 112 S.W.3d 805,
810–12 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d); Sosa v. State, 177 S.W.3d
227, 230 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that witness’s
identification based upon an individual’s build, when corroborated with additional
evidence, is legally sufficient). 
Although Deputy Valerio testified that Martinez was “tentative” in her
identification of appellant, the fact that a non-accomplice witness “cannot be
positive” in her identification goes to the weight of the testimony and not to its
admissibility. See Simmons v. State, No. PD-0791-08, 2009 WL 1175047, at *4 (Tex.
Crim. App. Apr. 9, 2009); Griffin v. State, 486 S.W.2d 948, 950 (Tex. Crim. App.
1972) (holding that less than positive identification based on clothing, where
defendant wore pantyhose over his head during commission of offense, sufficient to
corroborate testimony of accomplice). 
Accordingly, we overrule appellant’s first issue.Factual Sufficiency
          In his second issue, appellant challenges the factual sufficiency of the evidence
to support his conviction as a party to the offense. 
A.      Standard of Review
          In reviewing the factual sufficiency of the evidence, we view all of the
evidence in a neutral light to determine whether a jury was rationally justified in
finding guilt beyond a reasonable doubt. Grotti v. State, 273 S.W.3d 273, 283 (Tex.
Crim. App. 2008). Evidence is factually insufficient when, although legally sufficient
under a Jackson v. Virginia analysis, the evidence supporting the verdict is so weak
that the verdict seems clearly wrong and manifestly unjust or the supporting evidence
is outweighed by the great weight and preponderance of the contrary evidence so as
to render the verdict clearly wrong and manifestly unjust. Id.; Castillo, 221 S.W.3d
at 693 (citing Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979)). “[A]n
appellate court must first be able to say, with some objective basis in the record, that
the great weight and preponderance of the . . . evidence contradicts the jury’s verdict
before it is justified in exercising its appellate fact jurisdiction to order a new trial.”
Grotti, 273 S.W.3d at 283 (quoting Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim.
App. 2006)). A reversal for factual insufficiency cannot occur when “the greater
weight and preponderance of the evidence actually favors conviction.” Id.
          In our review, we must “consider the most important evidence that the
appellant claims undermines the jury’s verdict.” Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  
B.      The Law
          A person commits the offense of robbery if, in the course of committing theft
and with the intent to obtain or maintain control of the property, he (1) intentionally,
knowingly, or recklessly causes bodily injury to another or (2) intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death. 
Tex. Penal Code Ann. §§ 29.02(a)(2), 31.03 (Vernon 2003 & Supp. 2008). A
robbery is aggravated if, inter alia, the person causes serious bodily injury to another
or uses or exhibits a deadly weapon. Id. § 29.03(a)(2). A firearm is, per se, a deadly
weapon. Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2008). 
          “A person is criminally responsible as a party to an offense if the offense is
committed by his conduct, by the conduct of another for which he is criminally
responsible, or by both.” Id. § 7.01(a). A person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid
the other person to commit the offense. Id. § 7.02(a)(2). In determining whether the
accused acted as a party, we may consider events occurring before, during, and after
the commission of the offense and may rely on actions of the defendant that show an
understanding and a common design to commit the prohibited act. Payne v. State,
194 S.W.3d 689, 694 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d); see also
Coleman v. State, 956 S.W.2d 98, 99–100, 103 (Tex. App.—Tyler 1997, pet. ref’d). 
Circumstantial evidence may be sufficient to establish a defendant’s guilt as a party
to an offense. Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).
C.      Analysis
          First, the State presented evidence that Holmes committed an aggravated
robbery. See Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2), 31.03. Martinez
and Gallegos testified that a dark-colored Ford Explorer pulled around them and
stopped, and that two African-American men got out and approached them. Both
stated that the man who exited from the driver’s side possessed a handgun. Gallegos
testified that she was in fear that the gunman was going to kill her. Martinez testified
that she believed they were being “car jacked.” As Martinez attempted to race around
the men and drive away, the gunman shot Gallegos in the right arm. In a street lineup
conducted approximately an hour-an-a-half after the incident, Martinez identified
Holmes as the gunman. 
          The jury also heard appellant’s statement, in which he attested that Holmes had
stated that he “wanted to rob the people in the White Explorer.” In addition, the jury
heard the testimony of Arellano, who, at a nearby apartment complex within an hour 
after the Gallegos incident, was held at gunpoint by two African-American men who
first demanded his money, then took his money, and then shot him in the right arm. 
          From this evidence, the jury could have reasonably concluded that Holmes
committed an aggravated robbery, in that, while he was in the course of committing
theft, he intentionally caused bodily injury to Gallegos or intentionally threatened or
placed Gallegos in fear of imminent bodily injury or death. See Tex. Penal Code
Ann. § 29.02(a)(2). In addition, Holmes used a deadly weapon. See id.
§ 29.03(a)(2). 
          Appellant contends that there is no evidence that he, while acting with intent
to promote or assist the commission of the offense, solicited, encouraged, directed,
aided, or attempted to aid Holmes to commit the offense. See id. § 7.02(a)(2). 
          By his statement, appellant admitted that he was in the blue Explorer with
Holmes, Lee, and two other men on the night at issue. Lee testified that the group
was on their way to a nightclub at around 11:00 p.m. and that they were traveling
behind a white Explorer. Appellant stated that he and Holmes were sitting in the back
seat and that Holmes announced that he wanted to rob the people in the white
Explorer. Appellant also said that Holmes had a black revolver, about eight inches
long, in his waistband. Martinez and Gallegos testified that, at a stop sign, two men
got out of the blue Explorer and, together, the men approached them. Gallegos
testified that the gunman carried a “dark-colored” gun. Martinez identified appellant
as the man who got out of the passenger side. Martinez testified that both men came
from the back seat and that the faces of both men were concealed by bandanas. 
Gallegos testified that the men wore baseball caps. Deputy Glover testified that he
found two bandanas, two baseball caps, and a revolver (which was wrapped in one
of the bandanas) in the back seat of the Explorer.
          From this evidence, the jury could have rationally concluded that appellant
knew that Holmes intended to rob Gallegos, that appellant knew that Holmes had a
revolver, that appellant donned a bandana and cap to conceal his own identity, and
that, acting with intent to promote or assist the commission of the robbery, appellant
then got out of the blue Explorer and moved in concert with Holmes toward Gallegos
and Martinez in an attempt to aid Holmes in the commission of a robbery. See id.
§ 7.02(a)(2); Grotti, 273 S.W.3d at 283.
          Appellant contends that the evidence is factually insufficient because Lee’s
testimony conflicted with that of Gallegos and Martinez at trial and with appellant’s
own statement. Appellant contends that Lee’s testimony that appellant was the sole
actor was not credible because it conflicted with the testimony of Gallegos and
Martinez that two men exited the Explorer. It is the within the province of the jury
to resolve conflicts in the testimony and to determine what weight to afford the
evidence. See Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006);
Jaggers v. State, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d.). Moreover, the charge authorized the jury to convict appellant either as the
principal or as a party. As the sole judge of the facts, the jury was free to believe all,
some, or none of the testimony offered. See Cain v. State, 958 S.W.2d 404, 407 n.5
(Tex. Crim. App. 1997); Jaggers, 125 S.W.3d at 672. 
          In addition, appellant contends that the testimony conflicted concerning his
clothing on the night of the incident. To the contrary, the record shows that Martinez
testified that, during the incident, appellant was wearing a light-colored shirt and that,
at the time of the street lineup, appellant was wearing a light-colored shirt under a
dark-colored shirt. Lee testified that, during the evening, appellant had switched
shirts and was wearing a gray shirt underneath a dark blue shirt. This testimony is
consistent. 
          As the sole judge of the facts, the jury was free to believe all, some, or none of
the testimony offered. See Cain, 958 S.W.2d at 407 n.5; Jaggers, 125 S.W.3d at 672.
After reviewing all of the evidence in a neutral light, we cannot conclude that the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or that the
verdict is against the great weight and preponderance of the evidence. Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We hold that the evidence is
factually sufficient to support appellant’s conviction. 
          Accordingly, we overrule appellant’s second issue. Extraneous Offense
In his third issue, appellant contends that the trial court erred by admitting
evidence of an extraneous aggravated robbery allegedly committed by appellant.
At trial, the State sought to admit evidence of the aggravated robbery of
Arellano. The trial court overruled appellant’s objections, which were brought under
Rules of Evidence 403 and 404(b).
          A.     The Applicable Law and Standard of Review
          Evidence of extraneous offenses is not admissible to prove the character of the
person in order to show action in conformity therewith. Tex. R. Evid. 404(b). 
However, evidence of other crimes, wrongs, or acts may be admissible for purposes
“such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity,
or absence of mistake or accident, provided that upon timely request by the accused
in a criminal case, reasonable notice is given in advance of trial of intent to introduce
in the State’s case-in-chief such evidence other than that arising in the same
transaction.” Id. Even if admissible under 404(b), “evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice.” Tex.
R. Evid. 403. 
 It is within the trial court’s discretion to determine whether extraneous
evidence has relevance apart from character conformity and whether the danger of
unfair prejudice outweighs the probative value of the evidence. Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court’s determination as to the
admissibility of the evidence is reviewed for an abuse of discretion. Id. If the trial
court’s ruling lies within the zone of reasonable disagreement, we will affirm. Id. 
B.      Relevance
          An extraneous offense may be admissible to show identity only when identity
is an issue in the case. Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).
The issue of identity may be raised by the defendant during cross-examination of the
State’s witnesses. Id.; Thomas v. State, 126 S.W.3d 138, 144 (Tex. App.—Houston
[1st Dist.] 2003, pet. ref’d). Here, it is undisputed that identity was a contested
material issue in this case and that appellant placed his identity at issue through his
cross-examination of State’s witnesses.
 
          “To be admissible to show identity, an extraneous offense must be so similar
to the offense charged that the offenses are marked as the accused’s handiwork.”
Lane, 933 S.W.2d at 519; see Thomas, 126 S.W.3d at 144 (stating that, to be
considered relevant, “the evidence must bear the signature of the offender”).
Sufficient similarity may be shown by proximity in time and place or by a common
mode of committing the offenses. Johnson v. State, 68 S.W.3d 644, 651 (Tex. Crim.
App. 2002) (citing Lane, 933 S.W.2d at 519); Thomas, 126 S.W.3d at 144
(considering specific characteristics and time interval between extraneous and
charged offenses).
          Here, appellant contends that the extraneous offense merely shows a repeated 
commission of crime and that the extraneous aggravated robbery was not so similar
in characteristics to the alleged offense as to constitute a “signature.” The State
contends that the aggravated robbery of Arellano is so similar to the robbery of
Gallegos that it is admissible for the purpose of establishing appellant’s identity. 
          The record shows that the extraneous offense and the instant offense are both
aggravated robberies that occurred on the same night, within an hour of each other,
in the same area. See Johnson, 68 S.W.3d at 651 (considering offenses that occurred
within short interval of time to be evidence of similarity as to identity); Walker v.
State, 588 S.W.2d 920, 924 (Tex. Crim. App. 1979) (considering six offenses within
one month to be evidence of similarity as to identity and offenses taking place in the
same area to be evidence of similarity as to identity); Ransom v. State, 503 S.W.2d
810, 813 (Tex. Crim. App. 1974) (same). Further, in each offense, two African-American men approached the complainants while each complainant was in his or her
car, held the complainants at gunpoint, and shot the complainants. In each case, one
of the men was armed, and the other acted as a lookout. In each offense, the two men
were operating from a dark-colored or black vehicle that waited nearby. See Lane,
933 S.W.2d at 519 (considering specific modes to be evidence of distinguishing
characteristics that went to identity).
          We conclude that the trial court did not abuse its discretion by determining that
the extraneous offense evidence was relevant to the issue of identity.
C.      Prejudicial Effect
          Next, appellant contends that the probative value of the evidence was
outweighed by the danger of unfair prejudice. Appellant does not provide any
specific argument to support his contention in his brief on appeal.
          Although evidence is admissible under Rule 404(b), we must consider whether
“its probative value is substantially outweighed by the danger of unfair prejudice” by
examining (1) how compellingly the evidence serves to make more or less probable
a fact of consequence, (2) the potential for the evidence to impress the jury in some
irrational but indelible way, (3) how much trial time the proponent needs to develop
the evidence, and (4) how great is the proponent’s need for the evidence. See Tex. R.
Evid. 403; Montgomery v. State, 810 S.W.2d 372, 389, 390 (Tex. Crim. App. 1990);
Jaggers, 125 S.W.3d at 670.
          Here, the record shows that the evidence presented makes more probable a fact
of consequence, namely, that appellant is the person who assisted in the aggravated
robbery of Gallegos. The potential for the evidence to impress the jury in an irrational
but indelible way was not significant because the trial court instructed the jurors to
limit their consideration of that evidence to the issues of “proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
accident.” We must presume that the jury followed the instruction when, as here, no
evidence has been presented to rebut that presumption. See Thrift v. State, 176
S.W.3d 221, 223–24 (Tex. Crim. App. 2005). Although some time was taken to
develop the testimony as to the extraneous offense, we cannot conclude, nor does
appellant contend, that the amount of time was excessive. Finally, the State’s need
for the evidence was significant because, although Martinez identified appellant as
the second perpetrator, the record also shows that Martinez could not see appellant’s
face because of the bandana and that other testimony indicated that Martinez’s
identification of appellant as a perpetrator was “tentative.”
          We must uphold the trial court’s decision to admit evidence of other crimes,
wrongs, or acts so long as the court’s ruling was within the “zone of reasonable
disagreement.” Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d). We conclude that, here, there are sufficient common distinguishing
characteristics between the extraneous offense and the charged offense. We further
conclude that the trial court did not abuse its discretion by determining that the
probative value of the evidence was not outweighed by its danger of prejudice. See
Moses, 105 S.W.3d at 627. We hold that the trial court did not abuse its discretion
by admitting the extraneous evidence of the subsequent aggravated robbery.
          Accordingly, we overrule appellant’s third issue.
Conclusion
We affirm the judgment of the trial court.
 
 

 
Laura Carter Higley
Justice

Panel consists of Justices Jennings, Alcala, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).