

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00439-CR

**CODY JAY RILEY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court
Johnson County, Texas
Trial Court No. F45054**

## MEMORANDUM  OPINION

Raising two issues, Cody Jay Riley appeals his conviction on two counts of

aggravated sexual assault of a child (younger than 17) with a deadly weapon (the

bodily fluids of the defendant, who was positive for human immunodeficiency virus).

After finding him guilty on both counts, the jury assessed punishment on each count at

70 years' imprisonment and a $5,000 fine, and the trial court ordered the sentences to be

served concurrently.  We will affirm.

Riley's first issue contends that the evidence is insufficient to support the

conviction. The gist of Riley's sufficiency complaint is that the victim's testimony was not credible and that the State's entire case was predicated on the victim's testimony.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

If the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

At the time of trial, Jared Graham (a pseudonym), the victim, testified that he was age 17. He said that in early 2010, when he was age 15, he placed an ad on the website "craigslist" to find other males to have sex with. Graham said his ad indicated that he was 18, which Graham admitted was a lie. According to Graham, a person

named Cody Riley, who, like Graham, lived in Burleson, responded to the ad, and they began communicating by email. Graham identified the defendant at trial as Cody Riley and identified some of their email correspondence by each of their email addresses and the content of the emails. Graham also identified a pornographic image as one that Riley had sent him.

Graham said that in their communications, Riley asked his age, and he told Riley he was 18. Riley then found Graham on Facebook, and Graham's Facebook page showed that he was only 15. Graham said that when Riley confronted him with his Facebook page, Graham admitted to Riley that he was 15. Riley then expressed reluctance to meet Graham for sex because Graham was underage, and Riley asked him if he knew that Riley could get into trouble. Graham said that he told Riley that he knew the implications for Riley, but thereafter Riley agreed to meet for sex.

Their first meeting took place in early June of 2010. Graham said that he snuck out of his bedroom window late at night when Riley drove up to Graham's residence. Graham testified that Riley's car was a Mitsubishi Lancer, but he could not remember telling the police its color. Riley offered to drive Graham to Riley's house, but Graham refused. Graham then walked to a nearby park while Riley followed in his car. They then walked into a wooded area where they undressed. Graham said that Riley first tried to put his penis in Graham's anus without wearing a condom, and then Riley performed oral sex on Graham without either using any protection; only Graham ejaculated. Graham admitted that Riley did not force him to participate in these sex acts and that he was in agreement with them. Graham also said that Riley did not tell him

that Riley was HIV positive and that if he had known that Riley was HIV positive, he would not have engaged in these acts with Riley. After dressing, Graham walked home and Riley drove away.

Graham testified that he and Riley met a second time on June 19, 2010, which was Graham's sixteenth birthday. Again, Graham snuck out of his bedroom window late at night and met Riley at a nearby intersection. Riley drove Graham to Riley's home. There, Riley performed anal sex on Graham without a condom while he masturbated Graham to ejaculation. Riley withdrew his penis and ejaculated. Graham again admitted that Riley did not force him to participate in these sex acts. Riley then drove Graham home.

Graham did not remember communicating with Riley after this second meeting, and they did not meet again because Graham's father had found out what Graham was doing and reported it to the police. Graham again testified that Riley never told him before or after either meeting that he was HIV positive (which Graham learned a couple of weeks later), and again said that he would not have met Riley for sex if he had known that Riley was HIV positive.

Graham testified that police were able to get Riley's cell phone number from the emails, and Graham told police what kind of car Riley had and that he knew where Riley lived. A detective drove Graham by Riley's residence, and Graham was able to identify it. Graham said that police showed him a photo lineup for him to identify Riley, but he could not remember if he was able to identify Riley. He did remember circling the photo of the person that was Riley.

Burleson police detective Shannon Kimberling testified that she compared the cell phone, vehicle, and residence information that Graham had given her, that it matched with Riley, and that she therefore went forward with the case against Riley. She also said that she drove Graham by Riley's house and that he picked it out. Kimberling also showed Graham two photo lineups, and for each one, Graham said that it appeared to be Riley but was not "a hundred percent for sure." One of the photos of Riley was his four-year-old driver's license photo, and Kimberling did not have a date for the other photo of Riley.

Regarding the photo lineups, Kimberling said that Graham's selections were checked as "unable to positively identify" because, while Graham thought that Riley was in both photo lineups, he was not sure. Kimberling explained that unless a person identifies a suspect "a hundred percent"—or even if the person is 95% sure—police will note it as "unable to positively identify." Also, Kimberling said that Graham described the color of Riley's car as "dark burgundy" or "possibly black" but that it was actually maroon when she observed it in daylight, as opposed to seeing it at night without lighting, which is when Graham saw it.

Police sought and obtained an arrest warrant for Riley and a search warrant for Riley's home. Detective David Feucht testified that when he arrested Riley and explained why he was being arrested, Riley asked him "which one was underage." Riley went with police to his home for the execution of the search warrant, and Riley told Feucht and Kimberling that a medication found was for HIV. Medical records and several other witnesses confirmed that Riley was HIV positive.

Police seized computer equipment and computer storage devices, among other things, from Riley's home, and Kimberling turned it over to the Secret Service for forensic examination. Special Agent Jeff Williams was able to confirm that Riley and Graham had communicated by email, that the emails that Graham had turned over to police matched the emails on Riley's computer, and that the pornographic photo that Riley had sent Graham was on Riley's computer and was sent from it to Graham.

In his first issue, Riley notes that Graham was unable to remember a lot of details about his interactions with Riley, such as: how long they communicated; whether they discussed Graham's age at their first encounter; what time they met; if they discussed Graham's birthday; what Riley's cell phone number was; the color of Riley's car; and the photo lineups. Riley thus concludes that no rational trier of fact could have given Graham's testimony sufficient credence to sustain the conviction. We disagree.

As Riley acknowledges, an aggravated sexual assault conviction may rest solely on the testimony of a child victim. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013) (requirement that victim inform another person within one year does not apply to person under 17 at time of offense); s*ee Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Abbott v. State,* 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet ref'd). In any event, key parts of Graham's testimony—the emails, Riley's residence, Riley's cell phone number, and the make and model of Riley's car and its approximate color—were corroborated by law enforcement. Lastly, the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). As

the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). By finding Riley guilty, the jury obviously believed Graham's testimony. Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Riley committed the offenses of aggravated sexual assault beyond a reasonable doubt. We overrule Riley's first issue.

In his second issue, Riley asserts that on two occasions, the trial court abused its discretion in refusing to admit evidence of Graham's promiscuity. On the first occasion, Riley's trial counsel, in an attempt to establish that Graham and Riley may have merely communicated by email without actually meeting, sought to question Graham about whether Graham had received email responses from other men to establish that Graham had received emails from men whom he did not have sex with. Riley's trial counsel explicitly told the trial court that he was "not seeking to go there" [into Graham's sexual history]: "I'm not seeking to establish anything with regard to any other sexual activity that he may have had with any other person." The trial court sustained the State's relevance and Rule 412 objections.

To preserve a complaint for appellate review, the issue on appeal must comport with the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). "[A]n objection stating one legal theory may not be used to support a different legal theory on appeal." *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (op. on reh'g). Riley's issue on appeal does not comport with his argument at trial; he did not

seek to offer evidence of Graham' promiscuity at trial, and for this first occasion, his issue is not preserved.

On the second occasion, Riley's trial counsel attempted to question Detective Feucht about "possible multiple actors" in his investigation pertaining to Graham, and the State objected again on Rule 412 and relevance grounds. After questioning Feucht outside the presence of the jury on this issue, Riley's trial counsel stated: "I think we'll just go ahead and withdraw this line of questioning and so that shouldn't present any issue." By withdrawing this line of questioning and thus preventing the trial court from ruling, Riley did not preserve this issue for appellate review. *See* TEX. R. APP. P. 33.1(a); *Martinez v. State*, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002); *see also Young v. State*, 826 S.W.2d 141, 149 (Tex. Crim. App. 1991) (Campbell, J., dissenting). Issue two is overruled.

Having overruled both issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed March 13, 2014
Do not publish
[CRPM]